UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

December 6, 2019

LETTER TO COUNSEL

RE: *Troy B. v. Commissioner, Social Security Administration*;
Civil No. DLB-19-325

Dear Counsel:

On February 4, 2019, Plaintiff Troy B. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claim for Disability Insurance Benefits. ECF 1. I have considered the parties' cross-motions for summary judgment. ECF 11, 12. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

After a previous denial, Plaintiff filed his claim for benefits on November 26, 2013, alleging a disability onset date of March 30, 2013. Tr. 366-67. Plaintiff's Date Last Insured ("DLI") is December 31, 2014, so he had to establish disability on or before that date to qualify for benefits. Tr. 36. His claim was denied initially and on reconsideration. Tr. 287-90, 295-96. A hearing was held on October 11, 2017, before an Administrative Law Judge ("ALJ"). Tr. 53-90. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 33-45. The Appeals Council denied Plaintiff's request for review, Tr. 1-9, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "Degenerative Disc Disease of the Lumbar Spine Status-post Surgeries, Degenerative Joint Disease/Osteoarthritis of the Bilateral Knees Status-post Surgeries, Right Shoulder Rotator Cuff Tendinitis, Post-Traumatic Stress Disorder, Depressive Disorder and Anxiety Disorder." Tr. 36. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except no climbing of ladders/scaffolds, kneeling or crawling; occasional climbing of ramps and stairs, stooping, crouching, and balancing; no use of foot controls; occasional reaching overhead with right upper extremity and no exposure to hazards such as unprotected

>heights or moving mechanical parts. The claimant is limited to performing simple, routine tasks but can apply commonsense understanding to carry out detailed but uninvolved instructions; no production rate work where each job task must be completed within strict time periods; the claimant is limited to making simple work related decisions with only occasional changes in the routine work setting; occasional interaction with the public and time off task during the workday can be accommodated by normal breaks.

Tr. 39. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform his past relevant work as a personal trainer but could perform other jobs existing in significant numbers in the national economy. Tr. 43-45. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 45.

Plaintiff raises three primary arguments on appeal: (1) that the ALJ erred at step three in analyzing whether Plaintiff's impairments met or medically equaled Listing 1.04A; (2) that the VE's testimony was flawed and the ALJ failed to resolve conflicts between the DOT and the VE's testimony; and (3) that the ALJ erred in his treatment of the prior ALJ's decision. ECF 11-1 at 6-11. Each argument lacks merit for the reasons discussed below.

## I.     ALJ's Evaluation of Listing 1.04

Plaintiff first challenges the ALJ's evaluation of Listing 1.04A. ECF 11-1 at 6-7. To satisfy Listing 1.04A, a claimant must show that his disorder of the spine results in a compromise of the nerve root or the spinal cord, as well as:

>[e]vidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, [4] positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A. Plaintiff contends that neither the State agency consultants nor the ALJ considered all of the medical evidence when evaluating his impairments under Listing 1.04A. This argument is without merit.

First, Plaintiff's argument that the State agency non-examining consultants did not consider medical evidence received after February of 2014, including Plaintiff's September 2014 back surgery, ECF 11-1 at 7, is inaccurate. While the determination at the initial level was made on April 5, 2014, before Plaintiff's September 2014 surgery, Tr. 262, the reconsideration report identifies evidence received through December 30, 2015, and expressly states "claimant underwent surgery for back (09/02/2014)," Tr. 270.

Second, Plaintiff argues that "[m]uch of the criteria of Listing 1.04A was documented after the [September 2014 surgery]," and that "[t]he ALJ did not address any of these findings." ECF

11-1 at 7. Plaintiff cites to evidence of reduced range of motion, a positive straight leg test, reduced sensation, reduced strength, and motor loss from after September 2014. *Id.* (citing Tr. 855, 857, 916, 1100, 1103, 1107, 1140, 1146, 1158). However, the ALJ specifically referenced medical evidence from after Plaintiff's surgery, *see* Tr. 41 (referencing Plaintiff's October 2014 MRI), demonstrating that he did consider the whole record. The ALJ also gave partial weight to the State agency consultant on reconsideration who expressly considered Plaintiff's post-surgery records. Tr. 42 (finding that the record supported more limitations than the State agency consultant opined). Furthermore, the Commissioner is correct that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." ECF 12-1 at 9 (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quotation marks removed).

Even assuming that the ALJ did err in his analysis of Listing 1.04A, that error would be harmless. To meet a listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 391 (D. Md. 2000) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). The claimant bears the burden of proof at the first four steps of the sequential evaluation, including the listing analysis at step three. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting that the burden rests with the claimant, through the first four steps of the sequential evaluation, to present evidence establishing disability during the relevant period). In this case, Listing 1.04A requires, as one of the elements, "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04. Plaintiff cites to one positive straight-leg raising test in his medical history, but the record does not indicate that the test was performed in both the sitting and supine positions. ECF 11-1 at 7 (citing Tr. 916). Listing 1.04A requires evidence of positive straight-leg raising tests in the seated and supine positions for assessing disability. *See, e.g.*, *Bishop v. Colvin*, Civil Action No. 14-4068-CM; 2015 WL 5472494 at *5 (D. Kan. Sept. 17, 2015) ("While there is evidence of positive straight leg raise tests, most do not specify plaintiff's posture. The two positive tests that do specify posture were performed in the seated position. Thus, there is no evidence that any straight leg raise tests were conducted in the supine position. Without this evidence, plaintiff cannot show that he met all of the requirements of Listing 1.04A."); *Fripp v. Colvin*, Civil Action No. 9:14-0410-MGL-BM, 2015 WL 3407569 at *5 (D.S.C. May 27, 2015) (noting that a positive straight leg raising test without an indication of whether the test was both sitting and supine does not suffice to establish the requirements of Listing 1.04A "and that alone is fatal to his claim"); *Martin v. Colvin*, Civil Action No. 1:12-CV-o62-BL, 2013 WL 3155939 at *5 (N.D. Tex. June 21, 2013) ("Although Plaintiff correctly notes that Dr. Mehta reported positive straight-leg raising tests, the medical evidence of record does not indicate positive tests, both sitting and supine . . . The lack of positive straight-leg raising tests in both the supine and sitting positions demonstrates that the Plaintiff has failed to provide and identify medical signs and findings that support all criteria of Section 1.04 of the Listing of Impairments.") Accordingly, Plaintiff is unable, on the medical record he submitted, to meet his burden of proof that Listing 1.04A is met, so any other error in the ALJ's Listing 1.04A analysis is harmless.[1]

---

[1] Plaintiff also implies that the ALJ failed to follow the relaxed timing standards of Acquiescence Ruling 15-1(4) and *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013). ECF 11-1 at 6-7. However, he does not offer

## II. VE Testimony

Plaintiff next raises several arguments regarding the VE's testimony. ECF 11-1 at 8-9. Specifically, Plaintiff contends that the VE could not understand the ALJ's hypothetical over the phone, that a conflict existed between the reasoning levels of the jobs proffered and Plaintiff's RFC, and that the VE's testimony was inarticulate. *Id.*

The ALJ's hypothetical to the VE included the following: "the individual would be limited to performing simple, routine tasks, but can apply commonsense understanding to carry out detailed and [INAUDIBLE] instructions." Tr. 86. Plaintiff argues that the VE could not have heard the ALJ's hypothetical correctly because one word was inaudible. ECF 11-1 at 8. This is unpersuasive. The language in the hypothetical resembles the DOT's Reasoning Level of 2, *Dictionary of Occupational Titles*, App'x C, 1991 WL 688702 ("Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions"), and the ALJ's RFC assessment, Tr. 39 (Plaintiff "can apply commonsense understanding to carry out detailed but uninvolved instructions"). The VE did not ask for clarification, and his answer suggests that he understood the hypothetical.

Plaintiff further argues that the ALJ failed to identify an apparent conflict between the VE's testimony and the DOT. The VE identified three jobs when the ALJ posed the hypothetical to the VE: addressing clerk (DOT code 209.587-010), sorter/examiner (DOT code 734.687-042), and surveillance system monitor (DOT code 379.367-010). Tr. 86. According to the DOT, the job of addressing clerk requires a Reasoning Level of 2, the sorter/examiner job requires a Reasoning Level of 1, and the surveillance system monitor job requires a Reasoning Level of 3. U.S. Dep't of Labor, *Dictionary of Occupational Titles* §§ 209.587-010, 379.367-010, 734.687-042 (4th ed. 1991). A Reasoning Level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* App. C. A Reasoning Level of 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* The ALJ is required to address any conflicts or apparent conflicts between the VE's testimony and the information contained in the DOT. *See Pearson v. Colvin*, 810 F.3d 204, 208-10 (4th Cir. 2015); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A Dec. 4, 2000) ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). While the Fourth Circuit has found that an apparent conflict exists between a limitation to "short, simple instructions" and a Reasoning Level of 2, *Thomas v. Berryhill*, 916 F.3d 307, 313-14 (4th Cir. 2019), it recently held that there is not an apparent conflict between "simple, routine repetitive tasks of unskilled work" and a Reasoning Level of 2, *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019).

---

any support for the argument beyond describing the standards. In any event, Plaintiff is unable to show that he met the elements of Listing 1.04A regardless of timing.

Here, the ALJ found that Plaintiff's RFC included the ability to "apply common sense understanding to carry out detailed uninvolved instructions." Tr. 39. This language appears to follow the DOT's definition of Reasoning Level 2. Arguably, the ALJ should have made further inquiries of the VE to determine whether a conflict existed between Plaintiff's RFC and a job requiring a Reasoning Level of 3. However, the Commissioner is correct that any error is harmless because the first representative occupation of addressing clerk requires only a Reasoning Level 2, DOT § 209.587-010, and the second representative occupation of sorter/examiner requires only a Reasoning Level 1, DOT § 734.687-042. A claimant is not disabled if he is able to engage in "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). Thus, even if the ALJ failed to resolve an apparent conflict regarding the third occupation, that error was harmless, because the other identified occupations of addressing clerk (with 62,000 jobs nationally), Tr. 44, 86, and sorter/examiner (with 110,000 jobs nationally), Tr. 45, 86, exist in significant numbers. *See Lawler v. Astrue*, Civil Action No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that where only 75-100 jobs existed in the region where plaintiff lived did "not undermine the ALJ's conclusion that plaintiff [was] capable of performing work that exists in significant numbers in the national economy") (citing *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number)).

Plaintiff's argument that the VE's "incomprehensible monologue" requires remand, ECF 11-1 at 8, is also unpersuasive. Plaintiff challenges the VE's answer to the ALJ's query of whether her testimony was consistent with the DOT. Tr. 87. While a portion of the VE's answer was inaudible ("[INAUDIBLE] more specific here"), the VE testified that she "used [her] professional judgment" when the hypothetical's limitations were more specific than the descriptions in the DOT and its supplements. *Id*. The ALJ noted in his decision that he "determined that the [VE's] testimony [was] consistent with the information contained in the [DOT]" and that "[t]he [VE] further testified that she used her professional judgment as for the more specific limitations such as the overhead reaching." Tr. 45. Therefore, the ALJ permissibly relied on the VE's testimony as substantial evidence.

### III. Prior ALJ Decision & AR 00-1(4)

Next, Plaintiff argues that the ALJ erred in his treatment of the prior ALJ's decision under Acquiescence Ruling ("AR") 00-1(4). ECF 11-1 at 9-11. AR 00-1(4) requires an ALJ to consider and weigh any prior ALJ decisions. In the Fourth Circuit case underlying AR 00-1(4), *Albright v. Comm'r, Soc. Sec. Admin.*, 174 F.3d 473, 476 (4th Cir. 1999), the Court explained that the SSA should consider prior findings made in a claimant's earlier application, but should not reflexively adopt those earlier findings so as to "mechanically merge two claims into one." The Fourth Circuit clarified that its earlier decision in *Lively v. Sec'y of Health & Human Servs*, 820 F.2d 1391 (4th Cir. 1987), was "best understood as a practical illustration of the substantial evidence rule," rather than a direct application of the doctrine of claim preclusion or res judicata. *Albright*, 174 F.3d at 477.

Here, the ALJ assigned "significant weight" to the findings of the previous ALJ and noted that the prior ALJ's findings were "consistent with and not contradicted by the record as a whole." Tr. 43. Plaintiff takes issue with the ALJ's finding that he was limited to "occasional overheard reaching with right upper extremity" when the previous ALJ precluded him from overhead reaching altogether. ECF 11-1 at 9 (citing Tr. 38, 238). However, the ALJ cited to Plaintiff's testimony and the medical record to support his finding that Plaintiff's reaching difficulties were with his right arm. *See* Tr. 40 ("He has difficulty reaching overhead with his right arm, but reaching down is ok"), 41 (noting Plaintiff's "right shoulder rotator cuff tendinitis"), *id.* (noting Plaintiff's "mild pain during the physical exam of his right shoulder"); *see also* Tr. 78 (Plaintiff testifying that, if he needed to reach above his head, he would "do it with [his] left hand, [his] left side."). Furthermore, Plaintiff does not identify evidence supporting greater reaching limitations. Therefore, the ALJ supported his RFC assessment with substantial evidence, and the previous ALJ's finding in this case was not "such an important and probative fact as to render the subsequent finding . . . unsupported by substantial evidence." *See Albright*, 174 F.3d at 477-78.

Lastly, Plaintiff argues that the ALJ impermissibly applied the doctrine of *res judicata* to the previous ALJ's decision regarding his mental impairments. Plaintiff challenges the portion of the ALJ's AR 00-1(4) analysis stating that "the prior ALJ also found that the claimant's impairments did not meet or equal any listing of impairment." Tr. 39. However, the ALJ undertook a full analysis using the revised Listing criteria for mental impairments, Tr. 37-38, and did not merely adopt the prior ALJ's analysis under the now outdated Listing criteria, Tr. 237.[2]

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 11, is DENIED, and Defendant's Motion for Summary Judgment, ECF 12, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/
Deborah L. Boardman
United States Magistrate Judge

---

[2] The revised medical listings became effective on January 17, 2017, and apply to decisions made on or after that date. 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016).